1

2

3

4

5                        **UNITED STATES DISTRICT COURT**

6                        **EASTERN DISTRICT OF CALIFORNIA**

7

8   ALEXANDER J. DE MARKOFF,                Case No. 1:11-CV-02017 AWI MJS

9                  Plaintiff,               **ORDER GRANTING DEFENDANTS'**
                                            **MOTION FOR SUMMARY JUDGMENT**
10         v.

11  SUPERIOR COURT OF CALIFORNIA,
    COUNTY OF TULARE; LARAYNE
12  CLEEK; DOREEN VITALE; KERRIE
    SCALIA; DEANNA JASSO; AND DOES 1
13  through 20,
                                            (Doc. 33)
14                 Defendants.

15

16

17         This action is brought by Plaintiff Alexander J. de Markoff ("Plaintiff") against his

18  employer, the Superior Court of California, County of Tulare (the "Superior Court"), and four

19  individuals also employed by the Superior Court, LaRayne Cleek, Doreen Vitale, Kerrie Scalia,

20  and Deanna Jasso (collectively "Defendants") for alleged discrimination on the bases of race and

21  sex, and retaliation in violation of Title VII of the Civil Rights Act of 1964. Defendants move for

22  summary judgment.

23         I.      SUMMARY

24         Plaintiff was hired by the Superior Court on May 11, 2008 for the position of Accountant

25  III. Doc. 53 (Revised Plaintiff's Opposition to Defendants' Statement of Undisputed Facts), 4:2-4.

26  Plaintiff is male and identifies as being "of Black and Hispanic descent." Doc. 52 (Revised

27  Plaintiff's Memo in Opposition), 4:10. At the time of filing the motion, Plaintiff was still in the

28  Accountant III position and had suffered no formal disciplinary action. Doc. 53, 4:4, 4:18-19.

1    Plaintiff alleges that during 2009, he was repeatedly denied training opportunities that were

2    afforded to other white or female employees. Doc. 52, 1:26-2:1. In May of 2010, the Superior

3    Court received applications, including Plaintiff's, for the position of Court Financial Officer

4    ("CFO"). Doc. 53, 6:8-10, 6:19-20. In early August of 2010, the Superior Court offered Scalia the

5    CFO position, which she accepted. Doc. 53, 12-13. On August 9, 2010, Plaintiff filed a complaint

6    with the Superior Court alleging discrimination. Doc. 53, 10:2-3. On August 11, 2010, Plaintiff

7    filed a complaint with the EEOC against the Superior Court alleging discrimination. Doc. 54,

8    6:18-20. Plaintiff alleges that, because of the filing of his complaints, he suffered various incidents

9    of retaliation by the individual Defendants in August and September 2010, and January, February,

10   May, July, and September of 2011. See Doc. 53, 10:23-25, 11:7-8, 11:14-15, 11:19-24, 12:14-16,

11   13:2-3; Doc. 52, 25: 16-20, 25:25-26, 26:15, 27:12-13, 27:21-25, 29:13.

12   II.    THE LEGAL STANDARD

13   Summary judgment is appropriate when it is demonstrated that there exists no genuine

14   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

15   Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Satterfield v. Simon &

16   Schuster, Inc., 569 F.3d 946, 950 (9th Cir 2009). A fact is material when, under the governing

17   substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S.

18   242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material

19   fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the

20   nonmoving party." Anderson, 477 U.S. at 248. If the moving party meets its initial responsibility,

21   the burden then shifts to the opposing party to establish that a genuine issue as to any material fact

22   actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

23   The nonmoving party "must produce specific evidence, through affidavits or admissible discovery

24   material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th

25   Cir. 1991). In resolving the summary judgment motion, the evidence of the opposing party is to be

26   believed (Anderson, 477 U.S. at 255), and all reasonable inferences that may be drawn from the

27   facts placed before the court must be drawn in favor of the opposing party (Matsushita, 475 U.S.

28   at 587).

1       In the context of a motion for summary judgment in a Title VII action, federal courts apply

2 the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green. McDonnell Douglas

3 Corp. v. Green, 411 U.S. 792, 802-05 (1973); and e.g., Davis v. Team Elec. Co., 520 F.3d 1080,

4 1089 (9th Cir. 2008); Dawson v. Entek Intern, 630 F.3d 928, 934-35 (9th Cir. 2011). First, the

5 employee carries the burden to establish a prima facie case of discrimination. McDonnell Douglas,

6 411 U.S. at 802. If he so does, the burden shifts to the employer to articulate a legitimate,

7 nondiscriminatory reason for the challenged action. Id. If met, the employee must show that the

8 reason is pretextual "either directly by persuading the court that a discriminatory reason more

9 likely motivated the employer or indirectly by showing that the employer's proffered explanation

10 is unworthy of credence."[1] Davis v. Team Elec. Co., 520 F.3d at 1089 (citations omitted);

11 McDonnell Douglas, 411 U.S. at 804-05.

12       A plaintiff alleging employment discrimination "need produce very little evidence in order

13 to overcome an employer's motion for summary judgment. This is because the ultimate question is

14 one that can only be resolved through a searching inquiry--one that is most appropriately

15 conducted by a factfinder, upon a full record." Chuang v. Univ. of Cal. Davis, 225 F.3d 1115,

16 1124 (9th Cir. 2000)(internal quotations omitted). The Ninth Circuit has emphasized the

17 importance of "zealously guarding an employee's right to a full trial, since discrimination claims

18 are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate

19 the credibility of the witnesses." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1112 (9th Cir.

20 2004).

21     III.     CLAIMS 1 and 3: TITLE VII DISCRIMINATION

22     A.  Statute of Limitations

23       In the order on Defendants' motion to dismiss, the Court found that "any causes of action

24 in Plaintiff's complaint relating to injuries that Plaintiff may have suffered prior to December 7,

25 2009 are time barred." Doc. 22 (Order re Motion to Strike and Motion to Dismiss), 9:27-28.

26       Plaintiff's allegations regarding training opportunities occurring in 2009 all occur prior to

27

28  
[1] Technically, the burden does not shift back to the plaintiff at this stage because additional evidence is not required if the plaintiff's prima facie case raised a genuine issue of material fact regarding the truth of the proffered reasons. Chuang v. University of Cal. Davis, 225 F.3d 1115, 1127 (9th Cir. 2000).

1   December 7, 2009 and are time barred.

2         Plaintiff also indirectly raises a disparate treatment claim for denial of the training

3   opportunity on September 30, 2011. However, also on September 30, 2011, Plaintiff received his

4   Right to Sue letter from the EEOC; so denial of the 2011 training could not fall within the scope of

5   Plaintiff's EEOC complaint or investigation for discrimination. The scope of the plaintiff's court

6   action depends on the scope of the EEOC charge and investigation. Sommatino v. United States,

7   255 F.3d 704, 708 (9th Cir. 2001); EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994).

8   Denial of the 2011 training will be considered in Plaintiff's retaliation claim.

9         B.   Prima Facie Case of Discrimination

10        The first step of the McDonnell Douglas analysis is to determine whether Plaintiff has

11  established a prima facie case of discrimination. To establish a Title VII violation for

12  discrimination an employee must show that: (1) he belongs to a protected class; (2) he was

13  qualified for his position; (3) he was subject to an adverse employment action; and (4) similarly

14  situated individuals outside his protected class were treated more favorably. McDonnell Douglas

15  Corp., 411 U.S. at 802; Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).

16        *(1) Member of protected class*

17        For the purposes of this motion, the parties do not dispute that Plaintiff is a male of mixed-

18  race, of African American and Hispanic origin. Doc. 34 (Memorandum in Support of Motion for

19  Summary Judgment), 13:11-12. Race is a protected classification. 42 U.S.C. 2000e-2(a). Sex is

20  also a protected classification. Id.

21        *(2) Qualified for his position*

22        The parties dispute whether Plaintiff was qualified for his position at the time he was hired.

23  However, because Plaintiff was hired for his position in 2008 and remains in his position until the

24  present, a reasonable jury could find that he was qualified for his position.

25        *(3) Subject to adverse employment action*

26        In a Title VII discrimination action, adverse employment actions are those that materially

27  affect compensation, terms, condition or privileges of employment. 42 USCS § 2000e-2(a);

28  Rodriguez v. Pierce County, 267 Fed. Appx. 556, 557 (9th Cir. 2008); Moran v. Selig, 447 F.3d

4

748, 754 (9th Cir. 2006). Termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion are examples of adverse employment actions. Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

Plaintiff's discrimination claims are based on denial of training opportunities and not being selected for the CFO position. Training opportunities lost in 2009 are time-barred. A reasonable jury could find that being passed over for the CFO position in 2010 is an adverse employment action.

*(4) Similarly situated individuals outside his protected class were treated more favorably*

Whether two employees are similarly situated is ordinarily a question of fact. Beck v. United Food & Commercial Workers Union Local 99, 506 F.3d 874, 885 n.5 (9th Cir. 2007). Individuals are similarly situated when they have similar jobs and display similar conduct. Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003). "The employees' roles need not be identical; they must only be similar 'in all material respects.'" Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1157 (9th Cir. 2010)(quoting Moran v. Selig, 447 F.3d at 755). Materiality depends on the context and the facts of the case. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1114 (9th Cir. 2011); Hawn, 615 F.3d at 1157.

Here, it is undisputed that during the CFO application process in May through August 2010, Plaintiff was an Accountant III and had held the position since May 2008. Doc. 53, 4:2-4. It is undisputed that Scalia formerly worked as an accountant for the Superior Court, and during the CFO application process she was an independent contractor for the finance department. Doc. 53, 6:22-24. Scalia is white and female. Doc. 53, 13:14. Defendants believe Plaintiff and Scalia were both qualified for CFO position Doc. 53 13:12-13. Plaintiff and Scalia, along with seven or eight others, progressed to the second phase of the application process, which required a technical exercise. Doc. 53, 7:11-13. Plaintiff and Scalia then were both selected for personal interviews, along with four others. Doc. 53, 7:15-18.

Aside from this information, neither Plaintiff nor Defendants give much information regarding Plaintiff and Scalia's jobs and conduct that could resolve whether or not they were

1  similarly situated. Plaintiff and Scalia were both employed in the Superior Court's finance

2  department, and both contended for the same position, for which they were both qualified based

3  on their experience and education. From the information given, a reasonable jury could find that

4  they held similar jobs that were similar in all material aspects, and that they were similarly

5  situated. Scalia advanced to be a finalist and ultimately accepted the CFO position; hence, she was

6  treated more favorably.

7        A question of material facts exists as to whether Plaintiff can demonstrate a prima facie

8  case for race discrimination because a reasonable jury could find in Plaintiff's favor for each of the

9  required elements. The burden now shifts to Defendants.

10       C.  Defendants' Legitimate Nondiscriminatory Reasons

11       Title VII was not intended to diminish "traditional management prerogatives."

12  Steelworkers v. Weber, 443 U.S. 193, 207 (1979). "[T]he employer has discretion to choose

13  among equally qualified candidates, provided the decision is not based upon unlawful criteria."

14  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 259 (1981). "When the plaintiff has proved

15  a prima facie case of discrimination, the defendant bears only the burden of explaining clearly the

16  nondiscriminatory reasons for its actions." Id. at 260.

17       Defendants assert that they had legitimate nondiscriminatory reasons for selecting Scalia as

18  a finalist and ultimately for the CFO position. It is undisputed that Scalia had a degree in

19  accounting and a CPA license, while Plaintiff had a degree in business administration and did not

20  have a CPA license. Doc 53, 8:2-3, 8:19-23. They state that Scalia had four years of experience

21  with the Superior Court, while Plaintiff had three. Doc. 53, 8:2-7, 8:19-21.

22       Defendants describe the hiring process through sworn declaration. Doc. 40 (Cleek Decl.),

23  pp. 5-7. Of the individual Defendants, only Cleek, on a panel of four, was involved in interviewing

24  the candidates. Doc. 40, 6:23-28; Doc. 53, 7:19-21. Plaintiff interviewed well and passed through

25  the first three stages of the application process, but did not advance to the final stage. Doc. 40, 7:1-

26  3. Based on their qualifications and interview, the interview panel chose three people, two of

27  whom are male, as finalists. Kermit Rodda, selected as a finalist, had six years of experience as a

28  CFO for a superior court. Doc. 40, 7:1-3; Doc. 53, 8:11-12. Oscar Garcia, the third finalist, had a

1   degree in accounting and held a CPA license, with about five years of experience working as a

2   CPA. Doc. 53, 8:14-18. Scalia "impressed the interview panel with her leadership qualities as well

3   as her responses to questions related to determining staffing levels, creating workflow efficiencies,

4   and modifying organizational structures to best serve the needs of the Superior Court." Doc. 53,

5   9:2-6. The CFO position was a "supervisory and executive level position where leadership

6   qualities and skills, besides knowledge of financial processes, are important." Doc. 34, 13:28-14:2.

7   Scalia exhibited leadership qualities, professional demeanor, and knowledge beyond financial

8   processes. Doc. 40, 7:4-10. She "stood out as the strongest candidate and best fit for the Superior

9   Court." Doc. 40, 7:16-17.

10      Defendants have met their burden to explain the nondiscriminatory reasons for their

11   actions. The Court then considers whether Defendants' proffered reasons are a pretext for

12   discrimination.

13      D.  Pretext

14      The third step of the <u>McDonnell Douglas</u> analysis places a higher burden on the plaintiff

15   than at the prima facie stage. <u>Hawn v. Exec. Jet Mgmt.</u>, 615 F.3d at 1158 ("a plaintiff's burden is

16   much less at the prima facie stage than at the pretext stage."). A plaintiff may demonstrate pretext

17   in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not

18   motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is

19   unworthy of credence because it is internally inconsistent or otherwise not believable. <u>Chuang v.</u>

20   <u>Univ. of Cal. Davis,</u>, 225 F.3d at 1127; <u>Burdine</u>, 450 U.S. at 256.

21      *1.  Direct evidence*

22      With direct evidence, a triable issue as to the actual motivation of the employer is created

23   even if the evidence is not substantial. <u>Chuang</u>, 225 F.3d at 1128 (citations omitted). "[V]ery

24   little" direct evidence is required to raise a genuine issue of material fact. <u>Coghlan v. Am.</u>

25   <u>Seafoods Co</u>., 413 F.3d 1090, 1095 (9th Cir. 2004)(<u>quoting</u> <u>Godwin v. Hunt Wesson, Inc</u>., 150

26   F.3d 1217, 1221 (9th Cir. 1998)). Direct evidence of pretext refers to evidence that proves the fact

27   of discriminatory animus and is typically in the format of discriminatory statements or actions. <u>Id</u>.

28   at 1095, 1095 n.8. For example, two items of direct evidence found in <u>Chuang</u> "easily clear[ed]

1   this threshold" – a member of the decision-making body reportedly stated in a meeting that two

2   [derogatory phrase referring to Asians] were "more than enough," and a department chairman told

3   plaintiffs that they should pray to Buddha for help. Chuang at 1128.

4         Plaintiff does not suggest the existence of any direct evidence of discriminatory intent.

5         *2. Indirect evidence*

6         Demonstrating indirect evidence of pretext is more complicated. With indirect evidence,

7   "specific, substantial evidence of pretext" is required in order to create a triable issue, with respect

8   to whether the employer intended to discriminate, to defeat employer's motion for summary

9   judgment. Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983); Coghlan, 413 F.3d at 1095.

10  Indirect evidence can raise a triable issue of pretext for discrimination by demonstrating that the

11  employer is biased. Coghlan, 413 F.3d at 1095. Bias may be shown by evidence of, for example,

12  disparate treatment to those similarly situated or evidence that an employer's deviation from

13  established policy or practice worked to the plaintiff's disadvantage. Earl v. Nielsen Media

14  Research, Inc., 658 F.3d at 1116, 1117. Statistical evidence of disparate treatment is relevant to a

15  plaintiff's showing of pretext. Noyes v. Kelly Servs., 488 F.3d 1163, 1172-73 (9th Cir. 2007);

16  Heyne v. Caruso, 69 F.3d 1475, 1480 (9th Cir. 1995). Evidence of pretext may be viewed

17  cumulatively. Chuang, 225 F.3d at 1129.

18        The plaintiff may also offer evidence that demonstrates that the employer's proffered

19  reasons are unworthy of credence. Burdine, 450 U.S. at 256. Evidence that the chosen applicant

20  may not have been the best person for the job also may suggest that the nondiscriminatory reason

21  may not have been the real reason for choosing the chosen applicant over the plaintiff. Noyes, 488

22  F.3d at 1171 (quotations omitted). A finding that plaintiff's qualifications were "clearly superior"

23  to the qualifications of the applicant selected is alone a proper basis for a finding of

24  discrimination. Raad v. Fairbanks N. Star Borough, 323 F.3d 1185, 1194 (9th Cir. 2003). There is

25  yet no standard of what raises a triable issue of pretext based on a difference in qualifications, but

26  one Ninth Circuit judge suggests that it should be that "a reasonable jury could think that there is

27  such a disparity in their qualifications that the choosing of [the chosen candidate] over [the

28  plaintiff] is only explainable because of the [membership in protected class]. Shelley v. Geren, 666

8

1  F.3d 599, 617-618 (9th Cir. 2012)(Bybee, J., dissenting).

2         Further, "a plaintiff may not defeat a defendant's motion for summary judgment merely by

3  denying the credibility of the defendant's proffered reason for the challenged employment action."

4  Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029 n.6 (9th Cir. 2006). A plaintiff's

5  subjective belief that the challenged employment action was unnecessary or unwarranted is not

6  sufficient to create a genuine issue of material fact. Id. Likewise, a plaintiff's subjective personal

7  judgments about his own qualifications compared to another's are neither specific nor substantial

8  and do not meet the necessary standard for creating a genuine issue of material fact. Schuler v.

9  Chronicle Broadcasting Co., 793 F.2d 1010, 1011 (9th Cir. 1986); Clemmons v. Haw. Med. Servs.

10  Ass'n, 836 F. Supp. 2d 1126, 1140 (D. Haw. 2011).

11         In Schuler, the Ninth Circuit found that the employer's affidavits evidenced that the chosen

12  employee was more competent than the plaintiff, and the plaintiff's subjective personal judgment

13  of her own competence and confidence in her skills did not raise a genuine issue of material fact.

14  Schuler, supra, 793 F.2d at 1011. In Steckl, the plaintiff was unable to refute that the chosen

15  employee's experience was compatible with the position, and because he gave no indications of

16  motive or intent to support his position, his claims that he was not promoted due to discriminatory

17  motivation were empty and insufficient to prevent summary judgment. Steckl, supra, 703 F.2d at

18  393.

19         Considering the relatively low bar for a plaintiff alleging employment discrimination to

20  survive summary judgment together with the relatively high bar for the same plaintiff to offer

21  specific and substantial circumstantial evidence to demonstrate that his employer's proffered

22  legitimate, nondiscriminatory reasons for the adverse employment action were a pretext for

23  discrimination, the Court considers Plaintiff's evidence of pretext.

24         Plaintiff has brought this action against his employer for race and sex discrimination. At

25  the summary judgment stage, after a prima facie case and legitimate nondiscriminatory reasons are

26  accepted, Plaintiff must demonstrate a triable issue of material fact that Defendants discriminated

27  against him on the basis of his race or sex. In a discrimination action, it is insufficient for Plaintiff

28  to imply, even prove, that he was a more qualified candidate for the promotion, absent a triable

1   issue of discrimination. Even if Defendants' selected the wrong candidate, the Court cannot find a

2   triable issue of discrimination without any specific or substantial evidence of race or sex

3   discrimination in their decision. The adverse action in this case is that Plaintiff was not chosen for

4   the CFO position; indeed, he was not chosen as a finalist for the position.

5          Plaintiff's argument is primarily an attack on Scalia's qualifications. As demonstrated by

6   caselaw, even if his allegations were true, her supposed lack of qualifications alone would not give

7   rise to an inference that the true reason she was chosen over him was a pretext for discrimination.

8   As discussed, Plaintiff applied for the CFO position, for which it is undisputed that he was

9   qualified. He was selected from among eight or nine other candidates to advance to the second

10   stage, and among five other candidates for personal interviews. Of those selected for personal

11   interviews were three men and three women. From those six, two men and one woman were

12   selected as finalists. This is the point where the adverse action occurred –when he was not selected

13   as a finalist. Even if Scalia was not qualified for the position, Plaintiff still would not have been

14   promoted the CFO position, because it would have gone to either of the other two finalists who

15   were both men. This evidence undercuts Plaintiff's claim for sex discrimination.

16          Further, his arguments demonstrating pretext indirectly by attacking Scalia's qualifications

17   do not logically imply that she was not qualified to receive the promotion. Even more, they do not

18   demonstrate that Plaintiff was a better qualified candidate. Regarding Scalia's qualifications upon

19   receiving the position, Plaintiff argues that the Superior Court "deviated from the qualifications

20   listed in the job description and settled for a combination of qualifications and experience," that

21   Scalia was not a practicing CPA and a CPA license is not necessarily beneficial for the CFO

22   position, that Scalia did not know certain things that Plaintiff believed she should, and that she

23   was not the most qualified candidate. Doc. 52, 20:26-22:3. Plaintiff alleges that Scalia lacks court

24   financial knowledge and delegates tasks to the finance staff. Doc. 52, 15:4-8, 15:20-24. None of

25   these statements indicate that Scalia was not the best candidate for the job. Plaintiff's conclusions

26   are his own assessments and do not rebut the legitimate nondiscriminatory reasons that Defendants

27   ultimately chose Scalia. Defendants stated that skills beyond financial knowledge were sought for

28   the CFO position. Plaintiff has not submitted evidence to show that his qualifications were clearly

1  superior to Scalia's. Plaintiff has not pled or proven that his qualifications were at all superior to

2  any of the three finalists. It is not the responsibility of a jury in a discrimination case to decide

3  which candidate of similar qualifications was better qualified.

4         Plaintiff goes on to attack Scalia's performance once on the job. He argues that the

5  Superior Court lowered the salary range for the CFO position, that three people went into early

6  retirement during her tenure, and that she took medical leave in 2013, and that these things

7  demonstrate her lack of qualification. Doc. 52, 22:4-22:24. These allegations, even if true, do not

8  demonstrate that she was not qualified for the job, such that a triable question is raised as to the

9  credence of Defendants' proffered reasons.

10        Defendants offer the information that the Superior Court staff was composed of

11  approximately 90 percent female employees, and 45-50 percent Hispanic or Latino employees.

12  Doc. 53, 2:2-6. While Defendants identify five executive-level positions, Plaintiff identifies nine

13  positions of the following race and gender composition: two white females, one Hispanic female,

14  one white male, and one African-American male, and four unfilled. Doc. 53, 3:2-12. Plaintiff does

15  not offer indirect evidence of statistical discrimination that would raise an inference of pretext.

16  Also, in this particular adverse employment action, two of the three finalists selected over Plaintiff

17  were male.

18        Without any evidence of discriminatory motivation, the Court is unable to find in

19  Plaintiff's favor. Plaintiff obviously did not agree with Scalia's appointment to the position. It is

20  undisputed that he was qualified for the position, but his qualifications were not clearly superior to

21  Scalia's or the other two finalists. Even if she was not the best candidate for the position, it is not

22  implied by any evidence offered that she was selected rather than Plaintiff as CFO because of

23  discriminatory animus. Plaintiff has not suggested the choosing of Scalia over Plaintiff is so

24  senseless that it is only explainable because of his race or gender. Plaintiff's burden is not merely

25  to demonstrate that that Defendants' proffered reasons lack credence, but that lack of credence

26  supports an inference of pretext. Plaintiff has not offered evidence of bias, motive or intent. As in

27  Schuler and Steckl, Plaintiff's subjective opinion as to Scalia's credentials without evidence of

28  motive or intent to support his claims that he was not promoted due to discriminatory motivation

1   are empty and insufficient to prevent summary judgment.

2       Cumulatively, and considering deference to the employee at the summary judgment level,

3   a reasonable jury could not find that Plaintiff has offered specific and substantial evidence that

4   Defendant's choice in selecting Scalia for her qualifications, experience, and interview was pretext

5   for race or sex discrimination.

6       Because Plaintiff fails to rebut Defendants' nondiscriminatory explanation for his lack of

7   promotion, he fails to create a triable issue of fact with respect to his discrimination claims.

8   Defendants' motion will be granted as to these two claims.

9       IV.     CLAIMS 2 and 4: 1983 DISCRIMINATION

10      Section 1983 allows lawsuits to be maintained against any person who, under color of law,

11  subjects another to the deprivation of Constitutional rights. 42 U.S.C. § 1983. Only individual

12  defendants that caused or personally participated in causing the alleged deprivation of protected

13  rights are subject to liability under Section 1983. A plaintiff who fails to show intentional

14  employment discrimination under Title VII cannot succeed on a Section 1983 claim based on the

15  same conduct. Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1112 (9th Cir.

16  1991)(superseded on other grounds in Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027,

17  1041 (9th Cir. 2005)).

18      Plaintiff has failed to show employment discrimination under Title VII and therefore

19  cannot succeed on a Section 1983 claim based on the same conduct. Further, Plaintiff brings his

20  second and fourth claims against Cleek and Vitale, who, according to the evidence presented, did

21  not personally participate in the hiring process.

22      Defendants' motion will be grated as to these two claims.

23      V.      CLAIM 5: TITLE VII RETALIATION

24      Title VII retaliation claims also use the McDonnell Douglas burden-shifting analysis.

25  A.  Prima Facie Case of Retaliation

26       To establish a prima facie case of employment discrimination based on retaliation, the

27  employee must show (1) that he engaged in a protected activity; (2) he was subsequently subjected

28  to an adverse employment action; and (3) that a causal link exists between the two. Dawson v.

1  Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011); Davis v. Team Elec. Co., 520 F.3d 1080, 1093-94

2  (9th Cir. 2008).

3      *(1) Protected activity*

4      The antiretaliation provision of Title VII prohibits discrimination against an employee

5  because he or she opposed any unlawful practice or "made a charge, testified, assisted, or

6  participated in" a Title VII action. 47 U.S.C. § 2000e-3(a).

7      Plaintiff filed a discrimination complaint with the Superior Court and a charge with the

8  EEOC –both protected activities under Title VII.

9      *(2) Adverse employment action*

10     The antiretaliation provision exists to prevent employer interference to the Title VII

11 remedies. Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 63, 64 (2006). Therefore,

12 the provision only covers employer actions that "would have been materially adverse to a

13 reasonable employee or job applicant." Id. at 57. In contrast with the definition of an adverse

14 action in the discrimination context, which must affect the employee's terms and conditions of

15 employment, an adverse employment action in the retaliation context "must be harmful to the

16 point that they could well dissuade a reasonable worker from making or supporting a charge of

17 discrimination." Id. at 57, 64; Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000). This

18 includes actions causing him harm outside the workplace. Burlington Northern, 548 U.S. at 63.

19     However, Title VII does not set forth a "general civility code for the American workplace"

20 and the "decision to report discriminatory behavior cannot immunize an employee from petty

21 slights or minor annoyances that all employees experience." Id. at 68; Oncale v. Sundowner

22 Offshore Services, Inc., 523 U.S. 75, 81 (1998). Materiality of the challenged action is judged

23 from the perspective of a reasonable person in the plaintiff's position considering all the

24 circumstances. Burlington Northern, 548 U.S. at 71. An action that would be trivial in one

25 employment context may be materially adverse in another. Id. at 69.[2]

26     "[E]vidence of a department-wide email singling [the plaintiff] out for his complaints

27

28 [2]For example, a "schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children." Burlington at 69.

about the overtime policy; heckling; ostracism; rescheduling and reassignment of job duties; loss of seniority for purposes of requesting vacation time; and surveillance by supervisors" could be found to be meet the material adversity standard, under the plaintiff's particular circumstances. McBurnie v. Prescott, 511 Fed. Appx. 624, 625 (9th Cir. 2013). Evidence of "delays in receiving [the plaintiff's] paychecks on multiple occasions; the denial of personal time; criticisms of her performance by her supervisor; condoned yelling at her by coworkers; her shift change; and ultimately her forced resignation," taken in their totality, could be found by a jury to dissuade a reasonable worker from making or supporting a charge of discrimination. Alvarado v. Fed. Express Corp., 384 Fed. Appx. 585, 589 (9th Cir. 2010). A lateral transfer may constitute an adverse action, but when the plaintiff presented no evidence that the lateral position differed in any material way concerning responsibilities or conditions, and transfers were routine, no reasonable factfinder could conclude that the plaintiff suffered an adverse action. Sillars v. Nevada ex rel. Its Dep't of Empl., Rehab., & Training Sec. Div., 385 Fed. Appx. 669, 671 (9th Cir. 2010). Social snubbing by coworkers that did not have an effect on the employee's ability to perform her job, threat of termination, and a reprimand that had no effect on her job duties did not rise to level of a materially adverse employment action. Hellman v. Weisberg, 360 Fed. Appx. 776, 778-79 (9th Cir. 2009).

In this case, the alleged adverse employment actions, taken from Plaintiff's complaint, are as follows: First, on August 9, 2010, the day Plaintiff filed the discrimination complaint with the Superior Court, Cleek (the Court Executive Officer) asked Plaintiff to attend a meeting with Cleek, Scalia, and Vitale (the Human Resources Manager) to discuss Scalia's transition into the CFO position. Doc. 1 (Complaint), 4:23-26. Second, on September 1, 2010, Plaintiff was the only employee who was emailed regarding his inaccurate sign-out practices although others had also failed to follow the procedures as instructed. Doc. 1, 5:4-6; Doc. 52, 25:25-26. Third, on January 12, 2011, Scalia had a meeting with Plaintiff regarding potentially inappropriate comments he made in a public place a month prior. Doc. 1, 5:7-10. Fourth, on January 18, 2011, Plaintiff had a meeting with Scalia and Jasso regarding his "exceeding the scope of assignments" and "not following the Superior Court's chain of command." Doc. 1, 5:11-14. Fifth, on January 19, 2011,

1   Scalia told Plaintiff that a project he had been assigned a month prior was not within the scope of

2   his delegated assignment. Doc. 1, 5:15-19. Sixth, on February 14, 2011, the accountants'

3   workstations were reconfigured, which Plaintiff claims moved him near to Scalia and segregated

4   him. Doc. 1, 20-21. Seventh, on May 3, 2011, Cleek asked Plaintiff why he was one of the largest

5   users of LexisNexis in a certain timeframe. Doc. 1, 5:22-26. Eighth, on September 30, 2011, Cleek

6   denied Plaintiff's request to attend a training. Doc. 1, 6:1-3.

7         Following the filing of the complaint in this Court, Plaintiff alleges that his responsibilities

8   increased due to an employee's resignation on July 6, 2012, and again due to another employee's

9   maternity leave in July 2013. Doc. 54 (Plaintiff's Revised Decl.), 13:6-10, 13:22-14:2. It does not

10  appear that Plaintiff alleges that these increases in workload were retaliatory because he

11  acknowledges in his declaration that they were due to the absences of other employees, "the

12  budgeting process," and "Ms. Scalia and Mrs. Jamil's lack of court and governmental accounting

13  experience and knowledge." Doc. 54, 13:6, 13:9, 13:22, 13:25-26; Doc. 52, 14:9-15:13.

14        Defendants argue that none of the actions can be considered materially adverse because he

15  did not actually receive any formal discipline, and, absent any consequences, the alleged

16  retaliatory actions would not have dissuaded a reasonable worker from making a charge of

17  discrimination. Doc. 34, 16:1-3.[3] Individually, each action alone seems to be the type of petty

18  slights or minor annoyances of the workplace that are not protected by Title VII. But, as

19  demonstrated in <u>McBurnie</u> and <u>Alvarado</u>, heckling, ostracism, reassignment of job duties,

20  surveillance by supervisors, and criticisms of performance, when taken together and with other

21  actions, could be found to be materially adverse. Singling out Plaintiff for his behavior and having

22  several meetings regarding behavior for which he was not ultimately disciplined could be found

23  by a reasonable factfinder in Plaintiff's circumstances to be heckling, surveillance by supervisors,

24  or criticisms of performance. Scalia's informing Plaintiff that his assignment was not within the

25  scope of his assignment could be seen as a reassignment of job duties. The workspace

26  reconfiguration could be considered ostracism. The denial of Plaintiff's request to attend a training

27

28  [3] In fact, Plaintiff was not dissuaded from making or supporting a charge of discrimination when he filed an additional letter with the EEOC on January 23, 2011, after five of the eight adverse actions occurred. Doc. 41 (Schaffert Decl.), Exh. C.

1   could be found to affect the terms or conditions of Plaintiff's employment.

2          Taken together, these eight items could be found by a reasonable jury to be materially

3   adverse, such that these eight actions might have dissuaded a reasonable employee from making or

4   supporting a charge of discrimination.

5          *(3) Causal link between the protected activity and the adverse employment action*

6          Until recently, the causal link element of a retaliation case was construed very broadly so

7   as to require a plaintiff to prove only that the protected activity was a motivating factor of the

8   adverse action at the prima facie stage. Poland v. Chertoff, 494 F.3d 1174, 1180 n.2 (9th Cir.

9   2007)(quotation omitted); Head v. Glacier Northwest, Inc., 413 F.3d 1053, 1065 (9th Cir. 2005).

10  However, in 2013, the Supreme Court held that Title VII retaliation claims "must be proved

11  according to the traditional principles of but-for causation." University of Texas Southwestern

12  Medical Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013). This means that a plaintiff must show that

13  the unlawful retaliation would not have occurred in the absence of the employee's protected

14  activity.

15         Causation may be inferred from circumstantial evidence, including the proximity in time

16  between the employer's knowledge that the plaintiff engaged in protected activity and the

17  allegedly retaliatory employment decision. Cornwell v. Electra Cent. Credit Union, 439 F.3d at

18  1035; Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002). "But timing alone

19  will not show causation in all cases; rather, in order to support an inference of retaliatory motive,

20  the [adverse employment action] must have occurred fairly soon after the employee's protected

21  expression." Villiarimo at 1065 (internal quotations omitted).

22         Plaintiff has not provided the Court with any evidence supporting the allegation that any of

23  the abovementioned adverse employment actions are causally related to Plaintiff's filing

24  administrative complaints, let alone the but-for cause. Regarding the meeting between Plaintiff on

25  August 9, 2010, Cleek, Scalia, and Vitale, Defendants argue that they were not aware that Plaintiff

26  had filed a complaint earlier that day. Doc. 34, 16:24-26. The evidence further demonstrates that

27  Cleek, Scalia, and Vitale were planning on having the meeting with Plaintiff prior to August 9,

28  2010. Doc. 54, Exh T. Hence, Plaintiff's protected activity could not have been the but-for cause

of the meeting.

Regarding the email sent to Plaintiff on September 1, 2010 about his inaccurate use of the whiteboard sign in and out procedures, causation is not directly addressed. However, Defendants assert that Vitale conducted an investigation and determined that the policy was enforced as to all finance department employees. Doc. 37 (Vitale Decl.), 9:11-13. Plaintiff does not dispute that he did not follow the whiteboard procedure all of the time, and he does not provide evidence to support the contention that he was the only staff member to receive an email about inconsistent use. It is Plaintiff's burden to demonstrate causation and he has not provided evidence that he would not have received this email but for the protected activity.

The next alleged retaliatory action took place on January 12, 2011, when Scalia met with Plaintiff about comments he made in public. Defendants argue that they had concerns about public disclosure of court information, and Plaintiff does not dispute that he made the comments in a public place. Doc. 52, 14-16. Defendants argue that the five month lapse in time is too remote to allow an inference of causation to be drawn. Doc. 34, 19:7-8. Plaintiff does not directly address causation, but implies that Scalia may have had a different motive in speaking with him, because he had made those comments on December 4, 2010, but she waited over a month to address them, revealing that she was not truly concerned. Doc. 52, 17-21. This allegation does not implicate the meeting about the comments was caused by Plaintiff's administrative complaints. Both Plaintiff's public comments and the meeting about his comments took place after the protected activity, and no evidence of a causal relationship is provided.

Scalia and Jasso had another meeting with Plaintiff on January 18, 2011 regarding concerns of Plaintiff exceeding the scope of his assignment and not following the chain of command. Doc. 34, 18:19-21. Defendants raise the same argument that a five-month lapse in time does not allow an inference of causation to be drawn. Doc. 34, 18:26-28. Plaintiff argues that a causal link exists because neither Scalia nor Jasso was Plaintiff's supervisor at the time of the assigned duty for which they criticized him. Doc. 52, 28:1-2. Plaintiff also argues that the conduct for which they criticized him – exceeding the scope of his assignment and not following the chain of command– was reasonable and, at times, helpful. Doc. 52, 28:3-29:7. Plaintiff argues, without

supporting evidence, that Scalia and Jasso waited two months to meet with him regarding these instances to avoid inference of causation. Doc. 52, 29: 4-7. However, Plaintiff does not meet the burden to demonstrate a causal link between the meeting and the protected activity.

Defendants do not address the alleged retaliatory act occurring on January 19, 2011. Plaintiff alleges Scalia told him that a project he had been assigned a month prior was not within the scope of his delegated assignment. No evidence regarding causation is presented.

Plaintiff alleges that the workstation reconfiguration on February 14, 2011 was a retaliatory act. Defendants state that the reason for the reconfiguration was to enhance the space, that it was contemplated before Plaintiff's protected activity (even before Scalia was appointed CFO), and was also too remote in time to imply causation. Doc. 34, 18:11-15. Plaintiff refers to, but does not attach, a purchase order for the reconfiguration dated November 10, 2010 and claims that the reconfiguration did not in fact enhance all of the accountants' workstations. Doc. 52, 27:13-18. The evidence demonstrates that the reconfiguration was contemplated prior to Plaintiff's protected activity. Doc. 38 (Stainbrook Decl.), 3:15-19. Plaintiff has not demonstrated a causal connection.

Defendants argue that Cleek asked Plaintiff about his LexisNexis usage on May 3, 2011 because of a legitimate inquiry into Superior Court resources by a non-law-related employee. Doc. 34, 17:21-24. The question was asked nine months after Plaintiff's protected activity. Doc. 34, 17:2-26. Plaintiff argues that he was granted access to LexisNexis, as had all accountants, but does not address any causal relationship between the question and his protected activity. Doc. 52, 26:16-18. Plaintiff has not demonstrated a causal connection.

Defendants assert that the denial of Plaintiff's request to attend a training on August 9, 2011 was because none of the travel costs would be reimbursed, and Scalia only approved training when expenses were paid by the employee in whole or in part. Doc. 40, 8:17-21; 4:12-16; 4:23-5:21. Plaintiff argues that the Superior Court paid for travel and training requests in whole or in part, but does not refer to any evidence to support his claim. Doc. 52, 14:6-7. He does not establish a causal connection between the denial of training and the protected activity.

To the extent that Plaintiff asserts that his increased workload was an adverse employment

1  action or actions, no reasonable jury could find that the protected activity was the but for cause of

2  the increased workload. As discussed, Plaintiff asserts that his workload increased because an

3  employee resigned and he and another employee took the initiative to split her responsibilities.

4  Doc. 52, 14:16-20. Plaintiff asserts that the work fell upon him because he was qualified and well-

5  regarded for his ability. Doc. 52, 15:8-10.

6        Plaintiff also alleges that Scalia harbored ill-feelings toward Plaintiff regarding his

7  complaint of discrimination. Doc. 52, 11:19-22. However, the emails referenced were written

8  before August 9, 2010 when Plaintiff made his first complaint. Doc. 54, Exh. T. Scalia refers to

9  "his little act of defiance and disgust which I still feel was completely inappropriate and

10 disrespectful" on August 3, 2010, which cannot be referring to Plaintiff's protected activity which

11 occurred several days later. Doc. 54, Exh. T. Plaintiff does not provide any evidence which

12 demonstrates retaliatory animus, such as comments made by any defendant regarding Plaintiff's

13 EEOC filing.

14       Evidently there was tension between Plaintiff and Scalia that preexisted her appointment as

15 CFO and Plaintiff's filing a discrimination complaint. See Doc. 54, Exh. T. Her appointment as

16 CFO gave Scalia the supervising authority in the accounting staff. Doc. 54, Exh. J. The fact that

17 all of the alleged retaliatory actions took place after filing the complaint does not establish a

18 sufficient nexus for the Court to infer causation. Plaintiff does not bring any other evidence that

19 establishes a causal connection between any of the alleged adverse employment actions and his

20 protected activity of filing a complaint. Absent a demonstration of causation in fact, the allegedly

21 adverse employment actions, already relatively weak, cannot be found to be instances of

22 retaliation, but workplace annoyances from which an employee is not protected by Title VII.

23        Plaintiff engaged in a protected activity under Title VII, and a reasonable jury could find

24 that he suffered materially adverse employment actions when considered together, but no

25 reasonable jury could find that Plaintiff's protected activity was the but-for cause of the adverse

26 employment actions. Therefore, Plaintiff has not met his initial burden of demonstrating a prima

27 facie case for retaliation under Title VII. Defendants' motion will be granted as to this claim.

28 \\\

## VI.    CLAIM 6: 1983 RETALIATION

Because Section 1983 only allows lawsuits to be maintained against any person who subjects another to the deprivation of Constitutional rights, and Plaintiff has not met his burden to prove that a material fact regarding retaliation exists, Plaintiff's 1983 claim for retaliation against Cleek, Scalia, Vitale, and Jasso also fails to demonstrate a triable issue of material fact.

Defendants' motion will be granted as to this claim.

## VII.   CLAIM 7: MONELL LIABILITY

Plaintiff's seventh cause of action brought under Section 1983 under a Monell liability theory was dismissed in the Court's prior order. Doc. 22, 7:21-27. Monell liability is established against a local government under certain circumstances, but it does not waive state sovereign immunity under the Eleventh Amendment or establish liability against individuals. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

## VIII.   ORDER

For the foregoing reasons, Defendants' motion for summary judgment is hereby GRANTED.

IT IS SO ORDERED.

Dated:   June 24, 2014                        _____

                                                SENIOR  DISTRICT  JUDGE